IN THE UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---

**ARNOLD GIL CARABALLO, et al.**

**Plaintiffs,**

**v.**

**COMMONWEALTH OF PUERTO RICO,**
**et al.,**

**Defendants.**

Civil No. 13-1309 (DRD)

---

## OPINION AND ORDER

Plaintiffs Arnold Gil Caraballo ("Gil"), Joel Ramos Beltrán ("Ramos"), and Noel Román Ferrer ("Román") (collectively, "Plaintiffs"), along with Nanette Guevara and the conjugal partnership of Gil-Guevara, filed the instant complaint against Defendants Commonwealth of Puerto Rico ("Commonwealth"), the Secretary of the Department of Correction and Rehabilitation José R. Negrón Fernández ("Negrón"), Captain Ramón López López ("López"), and Lieutenant David Cruz Fernández ("Cruz") (collectively, "Defendants"), alleging political discrimination. Plaintiffs bring this action under Section 1983, alleging violations under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. See Docket No. 11. Plaintiffs also seek relief under the Constitution of the

1

Commonwealth of Puerto Rico and Puerto Rico law. Pending before the Court is Defendants' *Motion for Summary Judgment*. See Docket No. 66.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are three (3) sergeants at the Puerto Rico Department of Corrections who are also affiliated to the New Progressive Party ("NPP"). They had been assigned to the Aguadilla Detention Center for many years before they were transferred to a detention center in the west of Mayaguez. See Docket No. 51 ¶ 1-3, 6, 16, 28, 31, 38, 66, 68; Docket No. 64-1 ¶ 2-14. On February 28, 2013, all three Plaintiffs were presented with transfer letters signed by Defendant Negrón, and personally delivered by Defendant López, ordering their transfers to the Mayaguez facility.[1]

On June 21, 2013, Plaintiffs filed an *Amended Complaint* (Docket No. 11) claiming their transfers had no legal basis and were intentionally granted in violation of their First Amendment rights. Plaintiffs further aver that their relocation to the Mayaguez center was solely politically motivated, as a result of the new government sworn in on January 2013, subsequent to the November 2012 election that resulted in the victory of the Popular Democratic Party ("PDP"). Furthermore, Plaintiffs avow that, as a consequence of their transfer, they have been

[1] For a more detailed summary of facts, refer to the Court's *Opinion and Order* dated January 7, 2014. See Docket No. 24, at 2-4.

assigned to work rotating shifts (as opposed to the regular schedule exerted at the Aguadilla Department of Correction) and are now incurring in additional transportation expenses. Lastly, Plaintiffs assert that their previous positions at the Aguadilla facility are now occupied by employees affiliated to the PDP.

On January 7, 2014 this Court entered an *Opinion and Order* (Docket No. 24) dismissing Plaintiffs' Fourth and Fourteenth Amendment claims, along with all claims presented by Nanette Guevara and her conjugal partnership with Gil Caraballo, and all Section 1983 claims for monetary damages against the Commonwealth and all official capacity defendants. Plaintiffs' First Amendment and substantive state law claims, both for equitable and prospective injunctive relief against the Commonwealth and the official capacity Defendants, and for compensation for damages against all Defendants in their personal capacities, were not dismissed and therefore remain viable causes of action. <u>See</u> Docket No. 24.

On November 14, 2014 Defendants filed a *Motion for Summary Judgment* (Docket No. 66) on all remaining claims. Defendants argue that Plaintiffs fail to establish a *prima facie* case of political discrimination under the First Amendment. Specifically, Defendants contend that Plaintiffs cannot prove that Defendants were aware of their political affiliation, or that their transfers from Aguadilla to the Mayaguez facility, as

3

well as their reassignments to rotating shifts, amount to an adverse employment action under the First Amendment. Moreover, Defendants assert that Defendant Negrón is entitled to qualified immunity. Finally, Defendants seek the dismissal of all pendant state law claims and injunctive relief.

On January 23, 2015, Plaintiffs filed a *Response in Opposition to Defendants' Motion for Summary Judgment*. See Docket No. 64. Plaintiffs contend that Defendant López was aware of Plaintiffs' NPP political affiliations and that there are genuine issues of material fact as to whether Defendants Cruz and Negrón were aware of Plaintiff's political sympathies. Moreover, they assert that Plaintiffs' transfers and assignments to rotating shifts are adverse employment actions cognizable under the First Amendment. Lastly, Plaintiffs argue that qualified immunity is not warranted in the instant case.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving

party bears a two-fold burden: it must show that there is "no
genuine issue as to any material facts;" as well as that it is
"entitled to judgment as a matter of law." Veda-Rodriguez v.
Puerto Rico, 110 F.3d 174, 179 (1st Cir. 1997). A fact is
"material" where it has the potential to change the outcome of
the suit under governing law. See Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986). A fact is "genuine" where a
reasonable jury could return a verdict for the nonmoving party
based on the evidence. Id. Thus, it is well settled that "the
mere existence of a scintilla of evidence" is insufficient to
defeat a properly supported motion for summary judgment. Id.

After the moving party meets this burden, the onus shifts
to the non-moving party to show that there still exists "a trial
worthy issue as to some material facts." Cortes-Irizarry v.
Corporacion Insular, 11 F.3d 184, 187 (1st Cir. 1997).

At the summary judgment stage, the trial court examines the
record "in the light most flattering to the non-movant and
indulges in all reasonable references in that party's favor.
Only if the record, viewed in this manner and without regard to
credibility determinations, reveals no genuine issue as to any
material fact may the court enter summary judgment." Cadle Co.
v. Hayes, 116 F.3d 957, 959-60 (1st Cir. 1997). "Credibility
determinations, the weighing of the evidence, and the drawing of
legitimate inferences from the facts are jury functions, not

5

those of a judge." Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150 (2000)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. See Poller v. Columbia Broad. Sys., 369 U.S. 470, 473, 82 S.Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); see also Pullman-Standard v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury"). "As we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." Rodríguez v. Municipality of San Juan, 659 F.3d 168, 178-179 (1st Cir. 2011)(internal quotations and citations omitted). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 85 F.3d 86, 95 (1st Cir. 1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw *unreasonable* inferences or credit bald

assertions, empty conclusions or rank conjecture." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010)(internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)(internal citations omitted).

Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. See D.P.R. CIV. R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); see also Morales v. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001)(finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").[2]

---

[2] D.P.R. CIV. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, a s to which

If a defendant fails to file an opposition to the motion for summary judgment, the district court may consider the motion as unopposed and disregard any subsequently filed opposition. <u>Velez v. Awning Windows, Inc.</u>, 375 F.3d 35, 41 (1st Cir. 2004). Furthermore, the district court must take as true any uncontested statements of fact. <u>Id.</u> at 41-42; <u>see</u> D.P.R.R. 311.12; <u>see</u> <u>Morales</u>, 246 F.3d at 33 ("This case is a lesson in summary judgment practice …. [P]arties ignore [Rule 311.12] at their own peril, and … failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted.")(internal citations and quotations omitted); <u>see</u> <u>also</u> <u>Euromodas, Inc. v. Zanella , Ltd.</u>, 368 F.3d 11, 14-15 (1st Cir. 2004). However, not filing a timely opposition does not mean that summary judgment will be automatically entered on behalf of the moving party, as the court "still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted." *See* <u>Velez,</u> 375 F.3d at 42.

---

the moving party contends there is no genuine issue of material fact." Similarly, the non-moving party is required to submit a counter-statement "admit[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation." D.P.R. CIV. R. 56(c).

### III. LEGAL ANALYSIS

#### *Section 1983 Claims in General*

Section 1983 is the customary vehicle through which relief is sought for claims of political discrimination by state actors. Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012). For this purpose, Puerto Rico is the functional equivalent of a state. Santiago v. Puerto Rico, 655 F.3d 61, 69 (1st Cir. 2011). Section 1983 "creates a private right of action for redressing abridgments or deprivations of federally assured rights." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). As manifested by the Supreme Court, Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). Moreover, in view that a Section 1983 claim does not contain a built in limitations period, a court addressing this type of claim must borrow "the appropriate state law governing limitations [statutory time] unless contrary to federal law." Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003).

A claim pursuant to Section 1983 must satisfy two essential elements: "the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." Grajales,

682 F.3d at 46; Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). There are two aspects to the second inquiry: "(1) there must have been a deprivation of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been causally connected to the deprivation." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). Plaintiffs' Section 1983 claims, as expressed below, are grounded upon infringements of the First Amendment.

### First Amendment Claim

Its hornbook law that political discrimination is proscribed by the First Amendment of the United States Constitution. Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973). As the First Circuit has remarked, the freedom to support a particular political party is "integral to the freedom of association and freedom of political expression that are protected by the First Amendment." Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 48 (1st Cir. 2010). Moreover, it is well established that these protections prohibit government officials from taking adverse employment action against non-policymaking public employees due to the employee's affiliation. Welch v. Ciampa, 542 F.3d 927, 938 (1st Cir. 2008).

In order to succeed on a claim of political discrimination, a plaintiff must establish that (1) the plaintiff and defendant have opposing political affiliations, (2) the defendant is aware

of the plaintiff's affiliation, (3) an adverse employment action occurred, and (4) political affiliation was a substantial or motivating factor for the adverse employment action. <u>Torres-Santiago v. Municipality of Adjuntas</u>, 693 F.3d 230, 236 (1st Cir. 2012); <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 640 F.3d 1, 13 (1st Cir. 2011); <u>Lamboy-Ortiz v. Ortiz-Velez</u>, 630 F.3d 228, 239 (1st Cir. 2010). Plaintiffs bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiffs' constitutionally protected conduct was a substantial or motivating factor behind their dismissal. <u>Acevedo-Diaz v. Aponte</u>, 1 F.3d 62, 66 (1st Cir. 1993). Once the plaintiffs' prima facie burden is met, "the defendant may then rebut that showing with what is commonly referred to as the *Mt. Healthy* defense: by proving by a preponderance of the evidence that the governmental agency would have taken the same action against the employee even in the absence of the protected conduct." <u>Reyes-Perez v. State Ins. Fund Corp.</u>, 755 F.3d 49, 54 (1st Cir. 2014); <u>see also</u> Angulo-Alvarez v. Aponte de la Torre, 170 F.3d 246, 249 (1st Cir. 1999).

In the instant case, it is the Defendants' position that this Court should dismiss Plaintiffs' political discrimination claims in view that Plaintiffs are unable to establish the second and third prongs of their prima facie case. <u>See</u> Docket

No. 66. Specifically, they argue that: 1) Defendants were not aware of Plaintiffs' political affiliations before the complaint was filed, and 2) that their transfers from Aguadilla to Mayaguez and their reassignments to rotating shifts do not amount to an adverse employment action. Accordingly, the Court proceeds to consider whether Plaintiffs adequately met their prima facie burden and, if so, whether the record supports the existence of a genuine issue of material fact sufficient to defeat Defendants' *Motion for Summary Judgment.*

## 1. Knowledge

First, Defendants argue that Plaintiffs have not established Defendants' awareness of their political affiliation.[3] Specifically, Defendant Negrón contends that he never personally met Plaintiffs, who therefore never verbally expressed their political affiliations to him. See Docket No. 51, SUMF ¶ 93-99. Moreover, Defendants support their claim by arguing that Negrón did not participate in the process that culminated in Plaintiffs' transfers, but instead delegated the task to the DCR Security office, then led by nonparty Colonel Pedro Morales Montilla. Id. at ¶ 91. We disagree.

It is well established that "circumstantial evidence can suffice to show a defendant's knowledge of a plaintiff's political party." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d

---

[3] The Court notes that Defendants do not argue that Captain López was not aware of Plaintiffs NPP sympathies.

1, 7 (1st Cir. 2015); see also Martinez-Vélez v. Rey-Hernández,
506 F.3d 32, 44 (1st Cir. 2007) (noting that a jury could
reasonably infer that the defendant was aware of the plaintiff's
NPP affiliation based on testimony that the plaintiff "spoke
openly about her political views and sat in the NPP portion of
the de facto segregated cafeteria"). Moreover, the First Circuit
has observed that genuine issues of material fact as to
defendants' awareness of plaintiffs' political affiliation
precludes summary judgment of a First Amendment claim. Garcia-
Gonzalez v. Puig-Morales, 761 F.3d 81 (1st Cir. 2014).

    In the instant matter, Plaintiffs offered testimony claiming
that Defendant Negrón was made aware of Plaintiffs' political
affiliations by Defendant Cruz. Specifically, they aver that
Cruz had been tasked by Negrón to identify members of the NPP at
the agency. In addition, Plaintiffs testified that they were
consistently mocked by Cruz as well as other co-workers with
regard to their transfers from the institution. See Docket No.
64-1, SUMF ¶ 31-33. However, it is Defendant Negrón's position
that he never issued this command. See Docket No. 51, SUMF ¶
104. Additionally, Cruz further testified he did not participate
in these transfers in any manner. Id at ¶ 91-92. Nonetheless,
this Court understands that this allegation constitutes a prima
facie circumstantial inference that Defendant Negrón was aware
of Plaintiffs' political affiliations before the complaint was

13

issued. Plaintiffs were active members of the NPP at the time of their transfers. See Docket 64-1, SUMF ¶ 2, 7, 12. They have testified that Cruz was an aid of Negrón in identifying NPP members at the DCR, that they were consistently mocked about their transfers, and that no reason was given to them related to their transfer to the Mayaguez facility. Id. at ¶ 30-33, 40. Moreover, Plaintiffs claim their previous positions at the Aguadilla Detention Center have been occupied by PDP employees. Id. at ¶ 43. These circumstances, combined with their temporal proximity to Plaintiffs' transfers, are sufficient to create a reasonable inference in favor of the Plaintiffs that Negrón had knowledge of all three Plaintiffs' political affiliations.

Similarly, we disagree with Defendants' argument that Plaintiffs cannot adequately establish that Cruz knew of their political affiliations prior to the filing of the complaint. During his sworn deposition, Cruz acknowledged he has known all three Plaintiffs for the past 7 to 10 years. See Docket 64-1, SUMF ¶ 28. Moreover, the evidence shows that, during that time, Plaintiffs and Defendant Cruz were well known for their political sympathies. Plaintiffs are prominently known members of the NPP who actively participated in political activities in the region, and Cruz served as President of the organization of PDP employees at the DCR. See Docket 64-1, SUMF ¶ 2, 7, 12, 24-26. Additionally, in their sworn depositions, Plaintiffs Ramos

and Román claimed they specifically told Defendant Cruz that
they were members of the NPP. See Docket 64, Exhibit B,
Deposition of Ramos, page 22, lines 2-15; Exhibit C, Deposition
of Román, page 42, lines 17-23, page 43, lines 3-12.
Furthermore, all three Plaintiffs stated that Cruz alluded to
their political affiliations as he was telling them that they
were going to be transferred out of Aguadilla. Specifically,
Plaintiffs aver that Cruz made statements such as: "You do not
have much time here; you are going to be transferred out of
here," "When we win the job positions are going to be for us,"
and "I'm going to take you out." See Docket 64, Exhibit A,
Deposition of Gil, page 33, lines 7-22; Exhibit B, Deposition of
Ramos, page 28, lines 14-24, page 39, lines 15-25, page 31, line
1; Exhibit C, Deposition of Román, page 42, lines 1-16. In
addition, Plaintiffs testified that Cruz expressly made comments
about politics in the workplace and mocked them for their
political affiliation. See Docket 64-1, SUMF ¶ 33. Thus, the
totality of the circumstances and the evidence on the record
force the Court to examine the evidence and all reasonable
inferences thereto in the light most favorable to the
Plaintiffs, meaning that Cruz was aware of their political
affiliation before the complaint was filed. Viewing these facts
in the light most favorable to the Plaintiffs, and drawing all
reasonable inferences in their favor, we conclude that there is

a genuine issue of material fact as to whether Defendants were aware of Plaintiffs' political affiliations at the time of the transfer. Answering this question calls for "credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts, all tasks for the jury, not the judge." Garcia-Gonzalez, 761 F.3d at 99.

### 2. Adverse Employment Action

Defendants next argue that Plaintiffs' transfers from Aguadilla to Mayaguez and their assignments to rotating shifts are not adverse employment actions protected by the First Amendment. See Docket No. 66. For First Amendment purposes, an adverse employment action occurs "if those actions, objectively evaluated, would place substantial pressure on even one of thick skin to conform to the prevailing political view." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 (1st Cir.2010) (internal citations omitted). This level of burden is achieved when the employer's challenged actions result in a work situation unreasonably inferior to the norm for the position. Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989). "To evaluate whether the changes were sufficiently severe to warrant the 'unreasonably inferior' description—the fact-finder should canvass the specific ways in which the plaintiff's job has changed." Id; see also Ortiz Garcia v. Toledo Fernandez, 405 F.3d 21, 23-24 (1st Cir. 2005).

Furthermore, it is well established that, for claims arising under the First Amendment, actions short of dismissal or demotion, including denials of promotions, **transfers**, and failures to recall after layoff, constitute adverse employment actions. Morales-Tañon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 19 (1st Cir. 2008) (emphasis ours); See also Rutan v. Republican Party of Ill., 497 U.S. 62 (1990); Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 237 (1st Cir. 2012).

In the instant case, Defendants argue that Plaintiffs' transfers from Aguadilla to Mayaguez did not result in a work environment unreasonably inferior to the norm for the position, and therefore, did not constitute an adverse employment action. In support of their position, Defendants, citing First Circuit precedent, argue that a purely lateral transfer, that is, a transfer that does not involve a demotion, cannot rise to the level of a materially adverse employment action. See Docket No. 66. Defendants incorrectly rely on Marrero v. Goya of Puerto Rico, Inc.,[4] a case that does not involve a First Amendment Claim, but rather arises under Title VII of the Civil Rights Act. Nevertheless, the Court in Marrero v. Goya expressly acknowledges that, although a transfer that results in minor changes of work conditions does not constitute an adverse

---

[4] Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7 (1st Cir. 2002).

employment action, "courts have rejected any bright line rule that a transfer cannot qualify as an 'adverse employment action' unless it results in a diminution in salary or a loss of benefits." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 24 (1st Cir. 2002). Furthermore, the First Circuit has previously expressed that in First Amendment claims a reasonable jury could conclude that an adverse employment action was suffered when an involuntary transfer altered an employee's job duties and work environment, in spite that the same salary and job title were retained. See Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 766-67 (1st Cir. 2010).

Defendants assert that Plaintiffs' cannot adequately establish an adverse employment action in light that following their transfers Plaintiffs retained their job titles, salaries, and same responsibilities as other Mayaguez sergeants. Additionally, they argue that the rotating shifts which Plaintiffs' endured subsequent to their transfers (as opposed to the regular schedule they exerted at the Aguadilla facility) are normal to their positions as sergeants. See Docket 51, SUMF ¶ 5, 18, 22, 38, 42-44, 49, 64, 85-86, 89; Docket 64-1, SUMF ¶ 5, 10, 15, 34. Finally, Defendants contend that the change of location of Plaintiffs' employment is insufficient to amount to an unreasonably inferior work environment in view that their

commute only requires them to cross one or two municipalities. We disagree with the Defendants' position.

Although it is true that all three Plaintiffs retained the same job title and salary after their transfer to the Mayaguez facility, it is possible that a juror could determine that an adverse employment action in fact occurred. While at the Aguadilla facility, Plaintiffs enjoyed a shorter commute, regular shifts and low job related expenses. However, their transfer to Mayaguez has impacted their daily work experiences. Specifically, Plaintiffs now incur in a longer commute, greater expenses, and a change in work schedule. See Docket 64-1, SUMF ¶5, 10, 15, 44-59. Whether these circumstances are "unreasonably inferior" and therefore, enough to establish that an "adverse employment action" occurred, is an issue of fact for the jury to decide. Further, the matter of the transfer constitutes an action infused with issues as to motive and intent which belong to a jury determination. See Poller, 369 U.S. at 473; Pullman-Standard, 456 U.S. at 288; Dominguez-Cruz, 202 F.3d at 433.

In light of the aforementioned, we find that Plaintiffs have met their burden of demonstrating a genuine issue of material fact as to the prima facie elements of their First Amendment claim. Viewed in the light most favorable to the Plaintiffs, the summary judgment record amply demonstrates that a rational fact finder could conclude that the transfers both constituted an

adverse action and stemmed from a discriminatory animus. Therefore, we hereby **DENY** Defendants' move for dismissal of Plaintiffs' political discrimination claims.

### *Qualified Immunity*

Finally, Defendants assert that Secretary Negrón is entitled to qualified immunity for his actions. See Docket No. 66. The qualified immunity doctrine is known to protect public officials from "the specter of damages liability for judgment calls made in a legally uncertain environment." Ryder v. United States, 515 U.S. 177, 185 (1995). It "provides defendant public officials immunity from suit and not a mere defense to liability." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). Under this doctrine, entitlement to immunity is warranted if there is no violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." Mitchell v. Forsyth, 472 U.S. 511, 524 (1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A two-part test shapes the qualified immunity inquiry. A court should deny a defendant qualified immunity if: (1) the facts a plaintiff has either alleged or shown establish a violation of a constitutional right; and (2) the constitutional right at issue was *clearly established* at the time of the defendant's alleged violation. Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 51 (1st Cir. 2010). Law is *considered clearly*

*established* "either if courts have previously ruled that materially similar conduct was unconstitutional, or if 'a general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct' at issue." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 527 (1st Cir. 2009); see also Jennings v. Jones, 499 F.3d 2, 16 (1st Cir.2007). Furthermore, it has been interpreted that a right is clearly established if the contours of the right are sufficiently clear such that "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). That is, "a right is clearly established if, at the time the defendant acted, he was on clear notice that what he was doing was unconstitutional." Costa-Urena v. Segarra, 590 F.3d 18, 29 (1st Cir. 2009). As to clearly established law concerning First Amendment claims, the First Circuit has indicated that "the clearly established law both in this circuit and beyond precludes government officials from discharging civil or 'career' employees for politically-motivated reasons." Acevedo-Garcia v. Monroig, 351 F.3d 547, 564 (1st Cir. 2003).

Regarding this two-part analysis, it has been observed that both questions are matters of law for the court to decide. However, the First Circuit has expressed that the "objective reasonableness of the offense," although also a question of law,

is a matter that must be determined by the jury when there are
factual disputes as to material issues of fact. Kelley v.
LaForce, 288 F. 3d 1, 6-7 (1st Cir. 2002). That is, "while
preliminary factual questions regarding qualified immunity are
sent to the jury, the legal question of the availability of
qualified immunity is 'ultimately committed to the court's
judgment.'" Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 83-
84 (1st Cir. 2006).

Having discussed the applicable two-pronged analysis for a
qualified immunity defense, the Court now refrains from applying
the test to the facts of the case because there are unresolved
issues of fact at this time that preclude the need for such an
analysis. Concerning the qualified immunity defense, the First
Circuit has observed the following:

> pretrial resolution sometimes will be impossible
> because of a dispute as to material facts. In such a
> case, the factual issues must be decided by the trier
> of fact, thereby precluding summary judgment. Only
> after the facts have been settled can the court
> determine whether the actions were objectively
> reasonable so as to fall under the qualified immunity
> umbrella.

Kelley v. Laforce, 288 F.3d at 7 (1st Cir.2002) (citations
omitted); see also Rodriguez-Marin, 438 F.3d 83-84 (1st Cir.
2006).

As previously proclaimed, issues of fact remain as to Defendant
Negrón's motivations and intent, if any, at the time of the

alleged violation to Plaintiffs' First Amendment Claim. Therefore, it cannot be determined whether the qualified immunity defense is available to Defendant Negrón Fernandez at this time. The qualified immunity defense cannot be adjudicated until this factual dispute is resolved by the appropriate trier of fact-the jury. It is often remarked that the Court must always proceed with caution in the qualified immunity context, as the Court now does, because the fact-specific nature of the defense leaves "ample room for mistaken judgments." Malley v. Briggs, 475 U.S. 335, 343 (1986). The aforementioned facts in controversy are enough to keep this Court from taking a headlong leap into the qualified immunity inquiry at this point in time. See Santa Carrasquillo v. Rey Hernandez, No. CIV. 01-1428 (DRD), 2005 WL 2206449, at *7-8 (D.P.R. Sept. 9, 2005); Velez-Herrero v. Guzman, 330 F. Supp. 2d 62, 72 (D.P.R. 2004)(both refusing to apply the qualified immunity doctrine at the summary judgment stage due to unresolved issues of fact as to defendants motivations for the alleged misconduct). Defendant Negrón Fernandez's qualified immunity defense is therefore not warranted at this stage of the proceedings. Consequently, Defendant Negrón's request for summary judgment as to the qualified immunity defense is hereby **DENIED** due to unresolved

issues of fact that preclude entitlement to the suggested defense.[5]

### *Supplemental State Claims*

Finally, defendants argue that all of plaintiffs' pendent state law and injunctive relief claims should be dismissed. Under 28 U.S.C. §1367 "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Because federal claims still remain in the case at bar, the court will refrain from assessing Plaintiff's supplemental state law claims at this time, See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1176-77 (1st Cir. 1995). Accordingly, Defendants' move to dismiss Plaintiffs' supplemental state law claims is hereby **DENIED**.

### IV.CONCLUSION

In view of the above, the Court hereby **DENIES** Defendants' *Motion for Summary Judgment* (Docket No. 66). Plaintiffs have met their burden of demonstrating a genuine issue of material

---

[5] A jury instruction shall be given as to Defendant Negrón's knowledge of Plaintiffs' political affiliation before, during, or after their transfers to the Aguadilla facility. If the trier of fact were to find that Defendant Negrón had knowledge of Plaintiffs' political affiliation after the transfers had taken place, then Negrón would either not be held liable or at least be able to mitigate the potential effects of the transfers. For all other Defendants, a jury instruction shall be provided as to their animus of political discrimination.

fact as to the prima facie elements of their First Amendment claim. Therefore, summary judgment is not warranted. Defendant Negrón's request for summary judgment as to the qualified immunity defense is also **DENIED** due to unresolved issues of fact that preclude entitlement to the suggested defense. Consequently, Plaintiffs' supplemental state claims remain before the Court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of August, 2015.

/s/ DANIEL R. DOMINGUEZ

DANIEL R. DOMINGUEZ
U.S. District Judge